## A06A1900. BURNS INTERNATIONAL SECURITY SERVICES CORPORATION v. JOHNSON et al.
### (643 SE2d 800)

BERNES, Judge.

This is an action for the wrongful death of Tamika Johnson, the daughter of appellees Cedric B. Johnson and Yvette Prather. Ms. Johnson was employed by appellant Burns International Security Services Corporation ("Burns Security") at the time of her death, and Burns Security seeks interlocutory review of the trial court's denial of its motion for summary judgment. Because we conclude that the appellees' claims are barred by the exclusive remedy provisions of the Georgia Workers' Compensation Act, OCGA § 34-9-1 et seq., we must reverse the trial court and grant summary judgment in favor of Burns Security.

Following the denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Hanse v. Phillips*, 276 Ga. App. 558 (623 SE2d 746) (2005). We construe all of the evidence and the inferences and conclusions that can be drawn therefrom in the light most favorable to the party opposing the motion. Id.

So viewed, the record reflects that Burns Security hired Ms. Johnson as a security guard in January 2000. Ms. Johnson was 21 years old and had no prior security experience. After being hired, her training consisted exclusively of a one-day orientation program.

Burns Security did not arm its guards. Consequently, its policy was to conduct security surveys prior to accepting potential contracts and, if the job in question posed what it considered to be a high risk to the life or safety of its employees, it would not accept the contract. For higher-risk jobs that it did accept, its policy was to use guards with at least two years of security experience, and for medium-risk jobs, it required its guards to have at least one year of experience.

Despite her inexperience and its internal policies, Burns Security assigned Ms. Johnson to guard the Horizon Pacific Building and the adjacent Castlegate Hotel (the "Property"). The buildings on the Property were vacant and the site was known by law enforcement to house vagrants and transients and to be infested with "significant drug activity and prostitution." The record contains evidence that the job posed a high security risk to the guards.[1] Indeed, Burns Security was engaged to supply, and in fact the Property owner was billed and

---

[1] The security survey assessing the Property is apparently missing and could not be provided in the course of the litigation. Nonetheless, the individual who contracted for security on behalf of the Property owner stated that he "would definitely consider this to be a high-risk security job."

paid for, security consisting of two guards per shift, twenty-four hours per day, seven days per week.[2]

Nonetheless, Burns Security assigned Ms. Johnson to guard the Property alone, from 3:00 p.m. to 11:00 p.m. Her duties required her to patrol both buildings and the grounds surrounding the buildings. Burns Security did not provide Ms. Johnson with a weapon of any kind or other means to protect herself, nor was she furnished with a radio or other form of mobile communication.

Ms. Johnson was working at the Property on the evening of April 19, 2000, and an entry in the security logbook indicated that she had gone on security patrol at approximately 7:00 p.m. At 11:00 p.m., when a second guard arrived to relieve her, Ms. Johnson was not at the security desk and could not be located, although her cellular phone and other personal items remained. The relief guard notified Burns Security.

No effort was made to locate Ms. Johnson that evening, although at some point the police were contacted. A limited search was conducted by Burns Security the following day and again on April 22, 2000. Ms. Johnson's car was missing and later recovered at another location.

Finally, on May 11, 2000, after an extensive four-day search of the Property with the help of a cadaver dog, law enforcement found Ms. Johnson's deceased and decomposed body in a secluded room in the hotel. A visual identification was impossible due to the level of decomposition, but Ms. Johnson was positively identified through fingerprints and dental records. The medical examiner later determined Ms. Johnson's cause of death to be "ligature strangulation and blunt head injuries," and concluded that she had been deceased "for at least two weeks and perhaps longer." He ruled her death a homicide. As of the filing of this appeal, no arrests had been made in Ms. Johnson's death.

The appellees subsequently filed the instant action against Burns Security for the wrongful death of their daughter. Burns Security moved for summary judgment, asserting in part that the appellees are confined to bringing an action under the Workers' Compensation Act. The trial court denied Burns Security's motion, and we granted its application for interlocutory review of that order.

1. The Workers' Compensation Act is the exclusive remedy for an "injury by accident arising out of and in the course of employment." OCGA § 34-9-1 (4). See also OCGA § 34-9-11 (a); *Kennedy v. Pineland State Bank,* 211 Ga. App. 375 (439 SE2d 106) (1993). A felonious

---

[2] The Property owner actually engaged and contracted with Burns Security's predecessor, Wells Fargo, but the contract was assumed by Burns Security after it purchased Wells Fargo.

assault by a third party upon an employee is treated as an accident covered by the Act, so long as the "wilful act is not directed against the employee for reasons personal to the employee." (Citation and punctuation omitted.) *Helton v. Interstate Brands Corp.*, 155 Ga. App. 607, 608 (271 SE2d 739) (1980). See also OCGA § 34-9-1 (4); *Maxwell v. Hosp. Auth. of Dade &c. Counties*, 202 Ga. App. 92, 93 (413 SE2d 205) (1991). In order to determine if the assault occurred for reasons personal to the employee, we consider whether the injuries of which the employee complains (1) arose out of and (2) in the course of her employment. *Macy's South v. Clark*, 215 Ga. App. 661, 662 (452 SE2d 530) (1994); *Maxwell*, 202 Ga. App. at 93. If these two conditions are met, the employee's tort claims are barred by the exclusive remedy provisions of the Workers' Compensation Act. Id. Accordingly, whether the attack resulting in Ms. Johnson's death occurred for reasons personal to her depends upon whether her death arose out of and in the course of her employment with Burns Security. Id.

(a) *"Arising Out Of."* We conclude that the uncontroverted evidence of record demonstrates that Ms. Johnson's death "arose out of" her employment with Burns Security. We discussed the meaning of "arising out of" in *Maxwell*:

> The words "arising out of" mean that there must be some causal connection between the conditions under which the employee worked and the injury which he received. The causative danger must be incidental to the character of the employment, and not independent of the relation of master and servant. The accident must be one resulting from a risk reasonably incident to the employment. And a risk is incident to the employment when it belongs to, or is connected with, what a workman has to do in fulfilling his contract of service. It "arises out of" the employment[ ] when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment.

(Citation and punctuation omitted.) Id. at 94. See also *Gen. Fire & Cas. Co. v. Bellflower*, 123 Ga. App. 864, 868 (4) (182 SE2d 678) (1971); *Employers Ins. Co. of Alabama v. Wright*, 108 Ga. App. 380, 381-382 (133 SE2d 39) (1963).

The unrefuted evidence shows that Ms. Johnson, young and inexperienced, had been assigned to guard vacant property that was known to be inhabited by vagrants and transients in a high-risk area. She was required to work alone and at night. Burns Security did not provide her with any protection or any form of mobile communication in the event that she was in danger. Ms. Johnson's body was found at the property that she was assigned to guard.

"Under these circumstances, . . . the conditions of [Ms. Johnson's] employment did not merely provide the time and place for the assault upon her, but . . . the same increased the risk of the attack, and subjected her to a danger peculiar to the employment." (Citation and punctuation omitted.) *Maxwell*, 202 Ga. App. at 95. As such, we are constrained to conclude that Ms. Johnson's death "arose out of" her employment for the purposes of the Workers' Compensation Act as a matter of law. See also *Helton v. Interstate Brands Corp.*, 155 Ga. App. at 608-609 (the early morning hour at which the employee was required to report to work, in conjunction with the location of the company parking lot in the vicinity of an area of known criminal activity, provided the causal connection between her attack and her employment); *Gen. Fire & Cas. Co.*, 123 Ga. App. at 868-870 (4) (finding a causal connection between a bus driver and his employment when the driver was killed while returning to his hotel at night in an area particularly susceptible to violent crimes, when the driver was placed at that particular location on account of his employment).

(b) *"In The Course Of Employment."* We likewise conclude that the evidence of record irrefutably shows that Ms. Johnson's death occurred "in the course of employment" with Burns Security.

> An injury arises in the course of employment[ ] when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of [her] duties, and while [s]he is fulfilling those duties or engaged in doing something incidental thereto. This statutory requirement relates to the time, place and circumstances under which the injury takes place.

(Citations and punctuation omitted.) *Murphy v. ARA Svcs.*, 164 Ga. App. 859, 861 (298 SE2d 528) (1982).

Ms. Johnson reported to work at 3:00 p.m. and noted that she was going on security patrol at approximately 7:00 p.m. She was nowhere to be found when a second guard arrived to relieve her at 11:00 p.m., although her personal items remained and were never retrieved. Ms. Johnson's body was discovered in a secluded room on the Property nearly three weeks later, and the medical examiner concluded that she had been deceased for at least two weeks, possibly longer. This

uncontroverted evidence demonstrates that Ms. Johnson's death occurred within the period of her employment with Burns Security, at a place where she was performing her security duties, and while she was fulfilling those duties or engaged in doing something incidental to those duties. We therefore must conclude that Ms. Johnson's death occurred "in the course of employment" under the Workers' Compensation Act as a matter of law. Cf. *Gen. Fire & Cas. Co.*, 123 Ga. App. at 867 (3).

For these combined reasons, the trial court erred by failing to conclude that Ms. Johnson's death arose out of and in the course of her employment with Burns Security rather than for personal reasons. Compare *Johnson v. Holiday Food Stores*, 238 Ga. App. 822, 824 (1) (520 SE2d 502) (1999) (assault upon employee by her fiancé held entirely personal to employee, when the fiancé had no relationship with the employer or the premises whatsoever, and the employer did not create or allow to exist an environment which placed the employee at risk any more than if she had been anywhere else); *Kennedy v. Pineland State Bank*, 211 Ga. App. at 375 (employee was sexually assaulted by a member of the bank's board of directors for reasons personal to her because the victim's exposure to the hazard of sexual assault existed independent from her employment at the bank and was in no way connected to what she had to do in fulfilling her responsibilities of employment); *Wood v. Aetna Cas. &c. Co.*, 116 Ga. App. 284, 289 (1) (157 SE2d 60) (1967) (employee killed for reasons entirely personal when he was shot at work by the jealous husband of a co-worker with whom he had gone to lunch). Hence, appellees' remedy, if any, lies exclusively under the provisions of the Workers' Compensation Act, and the trial court should have granted summary judgment to Burns Security on that ground. See *Maxwell*, 202 Ga. App. at 95; *Helton*, 155 Ga. App. at 609.

2. In light of our holding in Division 1, Burns Security's remaining enumerations of error are moot.

*Judgment reversed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 19, 2007.

*Gray, Hedrick & Edenfield, Lloyd B. Hedrick, Jr.*, for appellant.
*Adams, Hemingway & Wilson, F. Bradford Wilson, Jr., John P. Fox, Robert S. Slocumb*, for appellees.